3:17mc147-JAM

UNITED STATES DISTRICT COURT DISTRICT OF CONNECTICUT

----------------------------------------

Andrew Chien: Pro Se Plaintiff          CIVIL ACTION NO:

-against-

Defendants:                             July 10, 2017

Future Fintech Group Inc.

HongKe Xue                              Jury-trial required

----------------------------------------

## COMPLAINT

## CONTENTS                                        Pages

Authorities ................................................................. 2

I.  Summary of Action ................................................ 4

II. Parties ................................................................. 5

III. Jurisdiction and Venue ......................................... 6

IV. Brief of The Case ................................................. 7

Part A. Chien was Skypeople's Public Figure for Going
        US Public Listing............................................... 7

Part B. Deceiving and Cheating Claim In Shaanxi Supreme Court.16

Part C. Defendants' Tort in Executing the Contract............. 20

Part D. The Lawsuits between Chien and Skypeople............. 23

V. Standard and Argument ......................................... 26

Part A. Defendants Consistently Engaged Deceiving and
        Cheating ........................................................ 26

Part B. Defendants Retaliated Chien for Unjust Enrichment ...... 28

Part C. Extortion ..................................................... 29

Part D. Retaliation .................................................. 30

Part E. Racketeering ("RICO") ................................... 31

Part F. Civil Right to Sue Tort Relative to Contract Fraud.. 34

### VI. Causes of Action ..................................... 36

Count 1.  Extortion Against both Defendants................36

Count 2. Falsified Statements and Concealed Material
         Information.................................... 37

Count 3. Conspiracy Against both Defendants.............. 38

Count 4. Racketeering Acts Against both Defendants....... 39

Count 5. Due Process Violation Against both Defendants...........40

Count 6. Unjust Enrichments Against both Defendants ...........40

Count 7. Tort in Securities Law Violation............... 40

### VII. Relief ........................................... 41

## Authorities

### Cases

Insurance Co. v. Morse, 87 U.S. 445(1874) .................... 34,35

Wang Xiaoning v. Yahoo (2007)............................ 36

### Constitution

Amen XIV................................................. 31,40

### U.S Codes

18USC §875(b) Extortion................................. 30,37

18USC 1001 False Statements ............................ 41

18USC §1341 & §1343: Mail& Wire Fraud ................32,39

18USC §1350 False certificate to SEC................... 40,41

18USC §1513(e)Retaliation .............................. 31,39

18USC §1623 False declarations......................... 28,37

18USC §1951 Interference of interstate commerce...............................32,39

18USC §1961 Definition of Racketeering........................... 31,32,33,39

18USC §1962 Prohibited Acts................................................ 32

18USC §1964(c) Triple damage for civil remedy................ 41

18USC §1965(a) Venue for RICO ......................................... 7

28USC §1332(a)(2) of diversity action ........................... 6,23

28USC § 1350 - Alien's action for tort ........................... 6,36

42USC §1981 & §1983 ...................................................... 34

### Connecticut General Statutes

§34-208 Winding up of LLC.............................................. 33

§52-595 - Fraudulent concealment of cause of action ............... 34

§52-604. Definition of foreign judgment ............................ 35

§53a-119 - Larceny defined (5) Extortion......................... 30,37

**COMPLAINT**

Plaintiff Andrew Chien ("Chien"), appeared as pro se, files the Complaint following the facts and belief to allege extortion, tort in both China and US, and acts of Racketeer Influenced and Corrupt Organization ("RICO"), Alien's action for tort, perjury and conspiracy, committed by defendants Future Fintech Group Inc., formerly (before June 6, 2017) named as Skypeople Fruit Juice Inc ("Skypeople") (Note: since all relevant events were happened before June 2017, therefore in the complaint, the name of Skypeople was used), a corporation registered in Florida with Chinese operation, and Hongke Xue ("Mr. Xue"), CEO of Skypeople. Both defendants, for unjust enrichment and retaliating Chien, through fraud made in Chinese Courts, perjured a story, abused due process, then obtained a wrong order in 2015 (Attached), which was developed from previous conspiracy to escape service payment to Chien in signed Contract of "Service for Public Listing" ("the Contract") in 2006. This suit is the countersuit and cross-suit, ignited by the Chinese act of tort, conspired with Skypeople.

## I. Summary of the Action

1. On May 23, 2015, Skypeople with Mr. Xue, under absent of Chien, developed fabricated story, cheat, and deceiving, in Shaanxi Supreme People's Court, China, then obtained a judgment

4

against USChina Channel LLC ("USChina") (a dissolved LLC of Chien's individual owned) and Chien for judgment debt of 253,400 Chinese yuan (about $37,315), with penalty of double interests (P. 10 of Attached 1). Currently, Chien was default in payment.

This judgment has several frauds, first it was secret without notice to Chien for trial or notice of judgment. Secondly, it sued a non-existing entity USChina, with real target of Chien. It became Chien's personal liability.

2. It is well known that Chinese court, at any time after the judgment credit effective, will issue coerced measure against unpaid judgment debtor, including indefinitely incarceration plus to force doing hard labor, in China. Therefore, Chien suffered losing the freedom to travel to China, and losing his business, and property value, damaged reputation, and losing physical visit or reunion with his Chinese relatives, friends, and social contacts etc.

3. Among the money award, absolutely majority (240,000 yuan) was eventually paid for Mr. Xue personally through receiver of Skypeople. Therefore, Mr. Xue is the major beneficiary of the unjust enrichment with purpose to retaliate Chien.

## II. Parties

4. Plaintiff: Andrew Chien, a resident of Connecticut, 665 Ellsworth Avenue, New Haven, CT 06511.

5

5. Defendant: Future Fintech Group Inc., formerly named as Skypeople Fruit Juice Inc. ("Skypeople"), a Florida company. The registered agency is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324, which has branch in CT with address: CT Corporation System, 67 Burnside Ave, East Hartford, Connecticut 06108-3408. Skypeople also has its own mailing address at: 135-27 38th Ave, Suite 105, Flushing, NY 11354. Skypeople has business activities in both US (with a business subsidiary locates in California, and agencies in New York etc.,), and China, with headquarter locates at 16F National Development Bank Tower, No.2 Gaoxin 1st Road, Xi'an, Shaanxi 710075.

6. Defendant: Hongke Xue ("Mr. Xue"), Chairman and CEO of Skypeople. Mr. Xue can be reached at Skypeople's address. Mr. Xue owned personal properties in US, including cash, and stock options, and shares of Skypeople.

### III. Jurisdiction and Venue

7. This Court has both subject and personal jurisdictions over this case due to "28USC §1332(a)(2)" of diversity action and Plaintiff seeking monetary damages in excess of $75,000 arising out of this dispute.

8. (a) This Court has both subject and personal jurisdictions over this case due to "28USC § 1350 – Alien's action for tort",

because "[t]he district courts shall have original jurisdiction
of any civil action by an alien for a tort only.….".  The case
is the tort that defendant Mr. Xue manipulated operation of
Skypeople (China), a fully owned subsidiary of Skypeople (US),
to initiate tort and racketeering in China, then caused the
property and reputation damage of Plaintiff Chien, a US citizen.

(b). This Court has both subject and personal jurisdictions
over this case due to "18USC §1965(a)" from a civil RICO claim.
Both Defendants have minimum contact in Connecticut to meet the
special jurisdiction requirement as specified in "§33-929(f)" of
Connecticut General Statutes.

## IV. Brief of the Case

### Part A. Chien was Skypeople's Public Figure for Going US Public Listing

9. Although China entered economy reform for past three
decades, but the period of created most wealth people was in
past one decade. Due to the data of Gross National Income per
capita ("GNI") developed by World Bank, China has GNI $930 in
year 2000, and $1,750 in 2005, and $7,880 in 2015. That is: from
year 2000 to 2005, it increased 88%, while from 2005 to 2015, it
increased 388%. But the GNI of US was stagnant.

Due to article of Time on June 10, 2014 by Hannah Gldberg,
China recorded 2,378,000 millionaires in 2013, a nearly 50%
increase in the country's private financial wealth, which

includes bank deposits, securities and pension funds but
excludes luxury goods and real estate.

Due to Hurun Report on Feb.24, 2016, China had 568
billionaires versus the United States' 535, giving it the
largest population of billionaires in the world. Hurun said the
main source of wealth for China's billionaires is real estate,
producing 117 billionaires. Manufacturing created 94 of their
billionaires, while technology created 68.

In past five years, the price of real estate in China has
big increase, which created tens of millions of peoples having
assets value over $1 million, but also created significant
inflation of the land price of the both cities, and countries.

From the whole picture of how rich people emerged from
Chinese economy, it will help to understand that Mr. Xue created
his own wealth by illegally taking advantage of Chien in running
the procedure of making Skypeople as a US public traded company,
for the purpose to inject big capital into Skypeople by
investors in both US and China.

10. Before the economy reform of China, the ownership of
business, or farm lands was either the governmental or
collective. People had small saving for basic life. Therefore,
the first generation of bosses in China, had to overcome the big
barrier of how to obtain the first capital collectively from

8

many privates, then to buy significantly depressed assets from the government. One of the solutions was to organize share ownership companies in China, which was new concept of China economy reform, lacked regulation, and considering illegal by some officers, no stock market for the public trading of the shares of the small capital company such as Skypeople in 2006.

11. Defendant Hongke Xue, together with his senior brother Yongke Xue, established and controlled operation of Skypeople with former name as Tianren Organic Food Co., Ltd ("Tianren") before 2008. Hongke Xue and Yongke Xue alternatively took the position of Chairman and CEO of Skypeople, or owned a control share position in Skypeople by issuing shares to themselves or taking other capital exchange, while most cash inflow of capital was from outside investors. In SEC filings of reverse merger between Skypeople with Entech dated February 28, 2008, Skypeople listed Hongke Xue as biggest shareholder, representing 50% of vote rights, and Yongke Xue as CEO. In recently 10-K filing for year 2016, it listed Hongke Xue as Chairman and CEO, and Yongke Xue as biggest shareholder, owned about 50% of shares. Hongke Xue with his brother built their wealth at the acquisition and sale of the shares and other assets of Skypeople.

12. Chien has been a financial consultant, and was the sole owner of dissolved USChina Channel LLC ("USChina") with business

to help Chinese private companies going into US public listing.

As set forth below, on August 28, 2006, USChina at plaintiff Chien, entered into a binding and enforceable agreement with Tianren (later changing name as Skypeople), represented by defendant, the purpose of which was for Chien to provide guidance to Mr. Xue concerning the process of a reverse merger, thereby allowing Tianren, a private company in China, to become a publicly traded company in the United States. Defendant Mr. Xue, after contacted several financial consultants, finally selected Chien because Chien supplied service with good quality at competitive price. Mr. Xue wanted to get private financing in China first, to pay costs of going US Public listing, which could generate wide interests from China investors.

13. Pursuant to the Contract, USChina agreed, among other things, to help Tianren locate a "listed or to be listed" shell company in the U.S., which would in turn acquire Tianren, and thus enable Tianren to become a publicly traded company in the U.S. Specifically, USChina agreed to locate a suitable shell company listed or to be listed on the Over-the-Counter Bulletin Board ("OTCBB") in the United States, and to accomplish a "Letter Of Intention" ("LOI")for merger, between that company and Tianren, on or before September 8, 2006, in order to allow Tianren to notify potential investors of its progress toward a

successful reverse merger and allay investor concern surrounding

forthcoming regulatory changes in China, which would increase

scrutiny over the acquisition of Chinese companies by foreign

entities, and which were scheduled to take effect after

September 8, 2006.  In turn, Tianren was obligated to make

certain payments to USChina in accordance with a payment

schedule, and was obligated to distribute to USChina 2% of all

outstanding shares upon its completion of public listing in the

U.S. Following execution of the Contract, Tianren made the

required initial payment of $30,000 and thereafter USChina

performed its part of the agreement, taking the necessary steps

to help Tianren to obtain some guarantee to carry out a reverse

merger, including securing a suitable company for a reverse

merger. Specifically, USChina secured for Tianren an OTCBB shell

company represented by Alliance Financial Partners Inc.

("Alliance") and arranged for "LOI" to be executed on September

7, 2006, between Alliance and Tianren, for the purpose of

engaging in a reverse merger, whereby the OTCBB company

represented by Alliance would acquire all of the issued and

outstanding shares of Tianren stock, thereby enabling Tianren to

become publicly traded.  Also, there was promising of potential

financing as shown in Item 8(i) of LOI. Alliance, under the

condition that Skypeople finished its auditing of the past two

11

years financial statements, promised financing as:

"Prior to the signing of a formal share exchange agreement, the delivery of a letter of commitment or intent from an investment company(s) or individual money mangers stating a firm commitment towards offering Tianren financing capital."

The LOI established a six-month period for the parties to conduct due diligence and close the merger, especially Tianren in that period, should finish the audited financial statements, and reorganize its corporation structure, following Chinese law, to obtain approval from Chinese government to become a foreign ownership company.

14. Following execution of the LOI, Chien engaged multiple media outlets to distribute the announcement of Tianren's substantial progress towards becoming a publicly traded company in the United States. Under the approval of Mr. Xue, Chien issued following News Release:

"Shaanxi Tianren Organic Food Co. Steps Forward OTCBB

NEW HAVEN, Conn., Sept. 8, 2006 -- USChina Channel LLC announced today that Shaanxi Tianren Organic Food Co., a privately owned company of the People's Republic of China, has made big progress in its plan to become a US-listed public company. Shaanxi Tianren Organic Food is the biggest producer of kiwi fruit in Asia and one of the major organic food producers in China. The Company predicted that in the calendar year of 2006 its revenue and net profits would be over tenfold their revenue and net profits five years ago because of its successful business expansion and acquisition strategy. In its business plan, there are more expansion and acquisition targets ahead because organic food produce is the one of the fastest-growing industries in the world.

In order to access the US capital market, Shaanxi Tianren Organic Food plans to list in OTCBB first. Today Shaanxi Tianren Organic Food Co. signed a "Letter of Intent" with Alliance Financial Partner Inc., a British Columbia Incorporation representing a number of publicly listed NASDAQ Over-The-Counter Bulletin Board companies. In this letter, Shaanxi Tianren Organic Food Co. Ltd. will furnish all the necessary reverse merger steps with one of the clients of Alliance Financial Partner Inc., in about six months.

If you need further information, please contact:

Andrew Chien
uschien@uschinachannel.net"

12

At that period, fewer Chinese companies could be listed successfully in US Stock market, therefore, any progress of a Chinese company could become a hot topic of the investors of both China and US, even it had to accomplish much uncertainty.

The announcement by Chien that Tianren, or Skypeople will go to US public listing soon, was circulated among numerous investor resources and published in more than forty well recognized media outlets, including in investor.com, a web site owned by "Investor Business Daily", WCNC.com, CBS MarketWatch, Yahoo, Hoovers, and more than forty different websites. Some publisher, like Sustainable Food News, wanted Plaintiff to send them Skypeople's logo to add on the news for their publication. By following US Media, other Chinese media also published the news, which became a popular news in both US and China.

15. Chien sent the information, regarding that the released news was widely adapted by USA and China media and associated links, to Mr. Xue and Skypeople(China). They were happy. They had published these associated links in their own website.

16. On November 15-19, Chien, upon invitation of Skypeople, flied to Xi'an Shaanxi, China, and stayed in Skypeople(China) for four days, met both Hongke Xue and Yongke Xue, and other middle managers and employees of investor relation. Chien, accompanied by the managers of Skypeople(China) directly visited

13

their contracted farming land for production of kiwi fruit, one major product of Skypeople, and took pictures there. Chien's visiting and photos were widely published on the website of Skypeople(China), and kept for more than one year, which was a clear message that the progress of Skypeople(China) for US Public listing, was going forward. Generally, Chien's activities were used by Defendants, as the major part of the investor relation to get Chinese private financing. Chien was a public figure for Skypeople before the secret transaction between Skypeople with Barron Capital Advisors LLC ("Barron") became public.

17. When Skypeople secretly engaged reverse merger with Entech at consultant of Barron, in February of 2008, Skypeople (China) reported that it acquired additional private investing for $5.3 million (equals about 42 million of Chinese yuan) in 2006, a very successfully private financing.

In the exhibits 9-2 and 9-3 of 8-K dated March 3, 2008, Skypeople(China) reported to have sold 4.4 million shares of Skypeople(China) with 1,269 shareholders. Among the 1,269 private investors, only less than 2% was local institutions or residents of Shaanxi province, and 40% were coming from Beijing; other came from Shanghai, Tianjin, Jiangsu etc., for about 25 municipalities or provinces of China. Such private financing in

14

a national scale was hard to see for a small non-public company
even in US. But such miracle happened in China in 2006, where no
public market for Skypeople was possible. The results of the
successfully private financing in China, approved Chien's work
giving big help to Skypeople. Following is the table for
additional paid-in capital among year 2005, 2006, and 2007. The
year 2007 had slightly variation was due to foreign currency
changing ratio changes. Basically, 2007 private financing in
China, was stagnant, because there lacked the public news of
further progressing in US Public Listing.

Table: Additional Paid-in Capital

| Year (Jan. 1 – Dec. 31) | 2005* | 2006* | 2007** |
|---|---|---|---|
| Additional Paid In Capital($) | 4,619,226 | 10,901,817 | 10,682,755 |
| *Reported on 8-K dated March 3, 2008<br>** Reported on S-1/A dated July 7, 2008 | | | |

18. After Skypeople listed in US Market from February 2008
till today, Skypeople obtained additional about $50 million
financing, which would make someone considering the private
financing in 2006 in China, was not so important, which is not
true. Because it must consider two facts:

(a) the farming land price significantly changed. In 10-K of
2006, Skypeople reported significant cash outflow because it
made a deposit of 200 million yuan (approximately $30 million)
in the second quarter of 2016 for the purchase 833.5 mu of

kiwifruits orchard in Mei County. The price was 240,000 yuan per mu, and 160 times as expensive as that of about 1500 yuan per mu in 2006.

(b) Although Barron promised over $3 million invest after Skypeople finished reverse merger in March of 2008, but Barron required Skypeople's to satisfy certain financial performance. Skypeople achieved the financial performance by China's acquisition, such as reported on Exhibit 10-6 of 8-K dated 3/3/2008, that Skypeople acquired Huludao Wonder Fruit Co., Ltd., in which Skypeople paid cash in several steps, the first payment in 2007, definitely was helped by the private financing in year 2006.

**Part B. Deceiving and Cheating Claim In Shaanxi Supreme Court**

19. The judgment of Shaanxi Province Supreme People's Court dated 3/23/2015 is abuse, and unreasonable. It found

"the representative of Skypeople announced that *Skypeople already became publicly listed in USA*" (3rd parag. of p.8, Attached), but "there was term that USChina will select an appropriate shell company for Skypeople before September 8, 2006. In this case, *USChina did not have the performance before the deadline specified by the contract. Till the time when this case was initiated, USChina still can't select an appropriate shell company for Skypeople.* Now, the plaintiff's complaint is the issue that plaintiff unilaterally cancelled the contract" (P.9 of Attached) (emphases added).

Defendants Mr. Xue and Skypeople made deceiving and cheating claim in the Chinese court. First, defendants abused the nature of the Contract, which is a consultant with every step must be closely demanded and cooperated by Skypeople. As Skypeople

secretly engaged Barron etc., Skypeople already broke the
contract, and concealed update information from Chien, which
made Chien impossible to perform the contract. As China Court
found that Skypeople finished the US public listing, China Court
should affirm that Skypeople unilaterally broke the contract,
which caused no refund as specified in item 9 of the Contract
between USChina (Part A) and Skypeople (Part B):

> "9 Liability for Breach of Contract
>     (1)if Part B requests to stop being listed for its own reasons, thus
> causing the corporate listing unable to proceed, **Part A shall not return the
> fees already received from Part B."** (emphases added)

Secondly, the contract, upon Mr. Xue demand, had the term to
find and sign the reverse merge agreement before the September
8, 2006, then to make 8-K filing although, it was changed by Mr.
Xue himself in later execution. The story is follows.

20. Alliance, a Canada investing consultant firm with
certain source of private financing, helped Chien to locate an
OTCBB company called RAZOR, which was willing to do reverse
merger with Skypeople. But Skypeople didn't qualify to become a
public company: (a) No audited financial statements (which was
fixed sixteen months later); (b)the company's structure can't be
allowed by Chinese law to do US listing (which was fixed three
months later by changing Skypeople(China) as a subsidiary of
Pacific Industry Holding Group Co., Ltd., a foreign corporation
of Republic of Vanuatu).

Therefore, RAZOR could only show interests in the future business development of a possible merger with Skypeople, but no any public announcement, including 8-K filing. Otherwise, it will violate SEC securities laws to cause the stock price carrying big volatile. Alliance also expressed it would not give private financing until Skypeople had audited financial statement. The information was well delivered to Mr. Xue. However, Mr. Xue insisted that public announcement was the most important to execute the Contract. Then the process was changed as above mentioned in ¶13-14. Mr. Xue's obligation and authority were shown in the Contract:

"4. Use of the Fee paid by Part B and Continuous Implementation of the Agreement:
……… if Part B has already paid the fees and **submitted the necessary financial report as per requirements,** but Part A haven't chosen the shell company suitable to merge with Part B within 2 weeks, then **Part A shall terminate the Contract after getting consent of Part B……**"

6. Other Explanations:
(3) The service provided by "USCHINA CHANNEL" is the consultant service. "USCHINA CHANNEL" shall assure that the source of information when it mentions about it is reliable.
**"USCHINA CHANNEL" is not the decision-maker and shall not be responsible for the result of "reverse merger". Part B shall be responsible for all its released news and financial reports. Part B shall also be responsible for conforming to China's law and regulations."**

21. Mr. Xue with Skypeople made false claim in China Court by concealed the material information that it was Mr. Xue who changed the performance of the contract, by using the News Release replaced the impossible SEC filing of 8-K, due to Skypeople's disqualification for US public listing at that time.

18

Mr. Xue didn't submit the following evidence to China Court: dozens of e-mail among Chien, Mr. Xue, employees of Skypeople, and Alliance, showing the process of how to change the performance of contract; and Mr. Xue's approval of the News Release; the documents showing Skepeople's successful private financing after the News Release on September 8, 2006; information regarding that Mr. Xue hosted, and entertained Chien's visit to Skypeople in November of 2006, etc.

22. The other tort of Mr. Xue with Skypeople in China Court is that the real target was to suppress Chien personal, not USChina. Because Skypeople and Mr. Xue know that USChina dissolved, and Chien entered personal bankruptcy in July of 2013. In China, plaintiff has the burden to approve defendant USChina is legitimate, then the suit can stand (P.5 Attached). But Mr. Xue and Skypeople continued their case despite that Chien's bankruptcy in 2013.

23. The process of China Court was abused, and conspiracy. Chien didn't receive any notice of when and where the trial will be held in Shaanxi Supreme People's Court.

24. As showed on p.5 of Attached, 240,000 yuan was paid by Mr. Xue on behalf of Skypeople. Therefore, after the judgment, Mr. Xue will get the full payment of 240,000 yuan, as the real beneficiary of the unjust enrichment.

### Part C. Defendants' Tort in Executing the Contract

25. There was exclusive terms of the contract to prevent either side to engage third party, as listed in Item:

"7. Confidential:

(2). All parties treat the information coming from opposite party as "confidential information" (except some information already public). Any party can't use the received confidential information of opposite party to the application unrelated to this contract, **not to allow leaking the information to any third party**."

9. Liability for Breach of Contract
(4)…… Before both parties reach agreement on termination of the Contract, **each party shall continue to implement the Contract. Any liability for breach of contract and the responsibility of compensation arising therefrom shall not be exempted.**"

26. Due to the contract, after the New Release, Skypeople should immediately enter auditing of the financial statement, arranged by Chien, and pay a reasonable fee. Chien contacted Kenne Ruan, CPA, P.C., Woodbridge, CT for Skypeople to do auditing. Mr. Ruan, via Chien, sent Skypeople an engagement letter on September 25, 2006, and answered them technical questions for several times. The last answer of Mr. Ruan, via Chien, was made in December 2006. But Tianren never signs the engagement letter without any explanation. Therefore, the auditing by Mr. Ruan couldn't go through.

27. The exclusive right not only was signed in the contract, but also in the signed "LOI" on September 7, 2006, that Skypeople must engage Alliance to do reverse merger:

On page 1, preface of LOI:

20

"The purpose of this letter (**"Letter of Intent"**) is to set forth certain non-binding understandings and certain binding agreements between Alliance Financial Partners Inc...."

On Item "9. **No Shop:**

After the sign of the Letter of Intent, Alliance and Tianren agree not to offer the business combination to anyone else, ***nor to provide any information to any other potential business combination partner*** except that either side fails to deliver the conditions as specified in 8 ***in the six month period*** (emphasis added)."

On Item: "11. **Termination:**

The binding effective of this letter as specified 6, 7 and 9 ***would terminate within six months*** (emphasis added) from the date of signature if Tianren, Alliance or USChina Channel LLC cannot deliver the condition as specified in 8, except that extended in writing and agreed upon by the parties."

Obviously, the binding effectiveness of the LOI had six-month period, and was effective until March 7, 2007.

28. In May 2007, shortly after LOI expired, USChina Channel Inc., a Nevada shareholder company controlled by Chien, was securing SEC approval to become an OTCBB company suitable to operate as a shell company for Skypeople, thus providing another suitable alternative for Skypeople to fulfill its obligation of entering into a Merging Agreement with a 'listed or to be listed' shell company in the event Skypeople could not proceed with Alliance.

29. Throughout the Summer and Fall of 2007, the parties continued to confer and discuss the status of Skypeople's public listing. Skypeople reassured Chien that it was continuing to actively pursue the Contract's purpose of becoming publicly traded in the U.S., but had experienced certain temporary

setbacks due to inadequate financials and the long procedure of shifting Skypeople from a Chinese held company to a foreign owned company, which were causing delay. Given this, neither Chien nor Mr. Xue took any action with respect to terminating the Contract and instead Chien continued to perform in good faith.

30. Later, Chien, at SEC filing, learned that:

(a) Skypeople registered, for the purpose of the OTCBB listing process, a holding company named Pacific in the Republic of Vanuatu on November 30, 2006, and Chien never being informed of the jurisdiction change of Skypeople.

(b) Skypeople hired a third party - Barron as financial consultants to get OTCBB listing.

(c) Skypeople engaged auditing firm Child, Van Wagoner & Bradshaw, locating at 5296 South Commerce Drive, Suite 300, Salt Lake City, Utah 84107, and issued an auditing report on June 19, 2007 for the financial period ended December 31, 2006 and 2005, which was included in the SEC filings: Form 8K filed on March 3, 2008.

Mr. Chien didn't exactly know when Skypeople engaged Child, Van Wagoner & Bradshaw, estimated around the beginning of 2007. In SEC Form S-1 filed on March 26, 2008, it showed Professional Fees (including auditor, and lawyer services) $225,000.

**Part D. The Lawsuits between Chien and Skypeople**

31. After Chien was aware that Skypeople and Mr. Xue cheated him, Chien initiated several lawsuits against Skypeople etc., to seek compensation damage from the contract that Skypeople promised to pay USChina a fee totaling $250,000, pursuant to the "Payment Timetable," as well as to pay and keep Chien 2% of the shares of Skypeople in a period of three years after becoming publicly traded in USA.

32. On August 8, 2008, Chien, filed an action in this Court, against Skypeople, Yongke Xue, and later added Barron Partners L.P. by Amendment, which was dismissed for a lack of subject matter jurisdiction because diversity jurisdiction did not exist pursuant to "28USC §1332". Chien v. Skypeople, 3:08-CV-1154 (CSH). In the ruling dated Oct. 9, 2009, the Honorable Judge Charles S. Haight, Jr. stated that "[b]ecause the Court lacks subject matter jurisdiction, it does not reach the alternative grounds for dismissal advanced by Defendants." The Court made no adjudication on the underlying merits of the claims.

33. On October 18, 2009, Chien brought an action, in Connecticut Superior Court against Barron Capital Advisors, LLC and Skypeople. Subsequently, Defendants removed that action to this court Following such removal, the case, Chien v. Barron Capital Advisors, LLC, 3:09-CV-1873(CSH), was dismissed on July

25, 2011, because Mr. Chien was a pro se litigant, and the Court held that a pro se litigant may not bring claims on behalf of a corporate entity. The Court made no adjudication on the underlying merits of the claims.

34. On August 18, 2011, Chien filed a complaint, in Connecticut Superior Court against Barron Partners L.P., Skypeople, and Yongke Xue. Chien v. Barron Partners, L.P., NNH-CV-11-5033976S. Following a motion to dismiss, the Court entered an Order, dated January 5, 2012, dismissing the claims by Chien, appearing pro se and in doing so held that Mr. Chien lacked standing and that the court lacked personal jurisdiction over the Defendants.  In his ruling, the Honorable Brian T. Fischer stated that "[a] motion to dismiss ... properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court."  Given the absence of jurisdiction, there was no adjudication on the merits as to any claim brought by Chien.

35. In March of 2012, USChina, at Counsel Todd A. Higgins, Esq., filed Complaint against Barron Capital Advisors, LLC., and Skypeople in US District Court, Southern District Of New York under Case No. 1:12-CV-02324(LAK). The tort claim against Barron was denied due to time bar. As for the allegation of the

contract breach claim against Skypeople, the court, issued order
on 6/19/13, to deny it due to that venue selection conflicted
with Chinese venue selection as specified in Contract despite
that Skypeople wasn't a signatory of the contract.

36. In Summary, although Chien was failed in previous
several lawsuits, there was no any legal adjudication on the
merits as to any claim brought by Chien. Especially, defendants
never can dispute the facts of their fraud. The recent Chinese
court fraud initiated by defendants in China, further approved
that the term of Chinese venue selection in the contract, was
fraud, classified as "Ouster Doctrine" as shown below.

37. (a) In September 2008, Skypeople filed an action in the
Xi'an Municipal Intermediate People's Court, in China, against
USChina and Anding Qian seeking a return of the service fees
paid pursuant to the Contract at issue in this matter.  The
complaint was denied.

(b). On October 11, 2010, Skypeople, again filed an action
in the Xi'an Municipal Intermediate People's Court, in China,
against USChina and Anding Qian to seek return of the payment
made to USChina pursuant to the Contract at issue in this
dispute, which was denied again. Then Skypeople made appeal, and
obtained a fraud order on 3/23/2015 by deceiving and cheating.
Chien has been default at the judgment-debt, which created great

threat to Chien's liberty when Chien does business in China.

### V. Standard and Argument

### Part A. Defendants Consistently Engaged Deceiving and Cheating

38. As mentioned in above ¶19-21, Skypeople and Mr. Xue made decision to change the performance of the contract by signing LOI with Alliance, a private financing controller of shell companies, rather than the shell company itself. From the substantive test, the first step of the contract was well done. Therefore, it was cheating and deceiving that in China Court, by defendants to allege Chien violating the performance of the contract.  Defendants did the same fraud in this court. In Chien v. Skypeople, 3:08-CV-1154(CSH), Skypeople argued, on the Memorandum filed on 10/06/08, that Chien, at USChina, failed to perform under the Contract:

"[b]ecause China Channel [sic] could not locate a suitable partner, Tianren terminated China Channel [sic] as its financial advisor, and replaced it with Barron Partner LP, located in New York, New York." (bottom parag. of p.4. Doc. #5, filed 10/6/08)

Skypeople's argument has two frauds: first it was a material deceiving statement of USChina not locating a suitable shell. Secondly. Skypeople admitted that it made tort on Chien by engaging Barron replacing USChina unilaterally and secretly.

39. As details in previous ¶19-21, Mr. Xue couldn't deliver the audited financial statements, therefore, there was no way to discuss the value of the shell company, which was public traded,

26

and its share price would be immediately affected by the News Release of the reverse merger. In the process of reverse merger and private financing, there will be the share distributions among Skypeople, and shell company, and private investment from Alliance etc. The share distributions will only be discussed based on the Financial Statements of Skypeople, in the same way as Skypeople did with Entech and Barron in 2008. Mr. Xue was clearly informed, and understood of this. On September 4, 2006, after Mr. Xue's verbal agreement, Mr. Chien sent the draft of the pending news to Mr. Xue for review. In the telephone conversation, Mr. Chien emphasized to Mr. Xue that there were two selections: if Mr. Xue didn't want to sign LOI and use News Release replacing a SEC filing, the refund item in the service contract would be executed immediately; and alternatively, if Mr. Xue agreed the change, all other contents of the contract would be the same as that in original. Mr. Xue selected the later. In the meantime, the information of the shell company of RAZOR was sent to Mr. Xue confidentially.

After negotiations and drafting, the final English version (no Chinese version) of LOI was prepared on September 6, 2006, with the last paragraph:

"If the foregoing is acceptable, please indicate your approval in the space provided below and return one fully executed copy of this Letter of Intent to Andrew Chien, USChina Channel LLC, 665 Ellsworth Avenue, New Haven CT 06511. Unless accepted by Alliance and delivered to Mr. Chien by 2:00 p.m. PST on

the seventh (7th) of September, 2006, this Letter of Intent shall expire and
shall be null and void and of no effect."

Dave Wong on behalf of Alliance, singed, and sent all scanned
pages of LOI to Chien by e-mail; and Defendant Mr. Hongke Xue
singed, and stamped seal of Shaanxi Tianren Organic Co. Ltd, on
the last page of LOI, then send a canned copy of the last page
to Chien by e-mail on September 7, 2006 before Chien specified
dead time of 2:00 p.m. PST (USA). Both parties, through Chien,
exchanged their signature copies. The execution was serious.

Defendants, by concealing the facts, committed "18USC §1623
False declarations" in both this Court and Chinese Courts

"18USC §1623 False declarations before grand jury or court
  Whoever under oath (or in any declaration, certificate, verification, or
statement under penalty of perjury as permitted under section 1746 of title
28, United States Code) in any proceeding before or ancillary to any court or
grand jury of the United States **knowingly makes any false material**
declaration or makes or uses any other information, including any book,
paper, document, record, recording, or other material, *knowing the same to
contain any false material declaration,*......
This section is applicable whether the conduct occurred within or *without the
United States.*

The later events of Skypeople merged with Entech, approved
that defendants are dishonest. If RAZOR had signed merger
agreement and made 8-K filing with Skypeople before 9/8/2006,
RAZOR, Alliance and Chien would have more trouble from
complaints of shareholders of RAZOR, or even suffered inquiries
from some authorities regarding securities law violation.

**Part B. Defendants Retaliated Chien for Unjust Enrichment**

40. No any Item of the Contract allowed Defendants looking

the refund of 240,000 yuan, which, from the contract, should be executed within 72 hours of disagreement of the performance dated 9/8/2006, not two years later after the fact of success of the execution.

As mentioned in previous ¶27, Defendants didn't do auditing in 2006, and later conspired with Barron to do US public listing, which caused the interruption of the contract with Chien. Due to following terms of the contract: Items:

**"4. Coverage of fees paid by Part B and continuous performance of the contract:**
... If Part B couldn't execute the next stage work **within three months** after the signatures of LOI, then the contract may end by the negotiation of both parties. **If the contract ends, Part A will not refund any received fees**, and the Shell company, no longer has any binding effect with Part B. Part A has no obligation to answer the inquiries of China's shareholders",

Skypeople and Mr. Xue didn't have any legal right to ask the refund. The Chinese lawsuit, at fraud procedure to sue a non-existing entity of USChina, is to retaliate Chien's disclosure at Mr. Xue's dishonest behavior in the process of US Public Listing, plus to look for unjust enrichment.

### Part C. Extortion

41. Since Chien violated paying judgment debt to defendants, Defendants have the right to coerce Chien making payment. In China, Chien will be subjected to torture, cruel, inhuman, or other degrading treatment or punishment, arbitrary arrest and prolonged detention, and forced labor, and beatings, which caused Chien's fear, and losing the freedom to travel to China,

and losing his business, damaged reputation, and losing physical

visit or reunion with his Chinese relatives, friends, social

contacts, and others.

In Connecticut General Statutes, Extortion combines with

larceny as:

"§53a-119 – Larceny defined
(5) Extortion. A person obtains property by extortion when he compels or
induces another person to deliver such property to himself or a third person
by means of instilling in him a fear that, if the property is not so
delivered, the actor or another will:………  (D) accuse some person of a crime or
cause criminal charges to be instituted against him; or (E) expose a secret
or publicize an asserted fact, whether true or false, tending to subject some
person to hatred, contempt or ridicule;………  or (G) testify or provide
information or withhold testimony or information with respect to another's
legal claim or defense;".

Since the judgment-debt was the result of fraud Chinese

lawsuit, therefore, Defendants engaged extortion and alien tort

at Chien, by offending both "28USC § 1350" and

"18USC §875(b) Whoever, with intent to extort from any person, firm,
association, or corporation, any money or other thing of value, transmits
in interstate or foreign commerce any communication containing any threat
to kidnap any person or any threat to injure the person of another, shall
be fined under this title or imprisoned not more than twenty years, or
both."

### Part D. Retaliation

45. Other fraud of defendants engaged in Chinese Courts, was

regarding status of USChina. USChina was limited liability

company, and had dissolved, and no assets when the Appeal in

Shaanxi Supreme People Court was going on. Due to Rule 48 of

Chinese Civil procedure, the lawsuit should cancel because

USChina wasn't existing or legitimate. But, Defendants deceived

Chinese court, and push the case forward. Therefore, the real purposes were to create unjust enrichment for both Skypeople and Mr. Xue, and to retaliate Chien for Chien's discovery of the dishonest and bad faith in the process of going US public listing.(Skypeople paid $2.2 million settlement on 01/27/2014, in a class action of Shareholders, Case No. 1:11-CV-02700(PKC), for not disclosure that Mr. Xue owned nearly half of the property when Skypeople using cash from US Investors to purchase the Chinese property in 2010).

46. Defendants violated due process of Amen XIV. The trial process of Shaanxi Supreme Court was secret, and no notice to Chien.

### Part E. Racketeering ("RICO")

47. Defendants committed acts of RICO, "18USC §§1961-1968".

"18USC §1961(1)(A) 'racketeering activity' means (A) any act or threat involving …… extortion, …."

"18USC §1961(1)(B)" listed many acts, including: "18USC §1513(e) Retaliating…

(e)Whoever knowingly, with the intent to retaliate, take **any action harmful** to any person, including **interference** with the lawful employment or **livelihood of any person**, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of **any Federal offense**" (emphasis added)

What defendants did in China as mentioned in above ¶45, was extortion and retaliation, offenses of "18USC §1961(1)(A)" and "18USC §1513(e)".

48. From the above-mentioned Racketeering causes, Chien suffered offenses in "18USC §1962 (d)conspiracy", and "18USC §1962(a),(b),(c)". To cite "18USC §1962 Prohibited activities", the alleged engaged racketeering pattern, defined in "18USC §1961(5)", will be at least two acts in past ten years.

In fact, in February of 2008, Skypeople under manipulation of Mr. Xue, conspired with Barron to violate the exclusive right of USChina and Chien, in the contract, was offenses of the "18USC §1341 & §1343 mail fraud and wire fraud", which including acts, at mail and wire, of cheating Chien and conspired with Barron, to engage reverse merger with Entech etc.

Defendants offended "18USC §1951 Interference of interstate commerce" also. Why? (a)To plan or trade shares in stock market nationally, is an interstate commerce. What Skypeople and Barron did, was to avoid issuing, and guaranteeing 2% of outstanding shares of Skypeople to Chien for 3 years, which was dishonest, deceiving acts of the Wall Street's business; (b) Chien's business has been interstate commerce since 2006, because it is relative to private investing, and public traded companies. The tort of Defendants damaged Chien's business, has long time effect, including significantly negatively affected Chien's another public company of "China Bull Management Inc". Chien can't take China trip to meet customers. Chien's reputation

damaged. Chien's social contact in China, such as Anding Qian etc, is afraid to make any help to Chien, because of the threat of lawsuit.

49. Regarding the existing of racketeering enterprises, as defined by "18USC §1961(4)", the enterprises may be individual. Here, Skypeople, HongKe Xure, and Yongke Xue were major members of Racketeering enterprises. Others, such as Barrons, and counsels of Skypeople or Hongke Xue, joined the activities of the Racketeering enterprises.

**Part F. Civil Right to Sue Tort Relative to Contract Fraud**

50. (a)USChina was dissolved several years ago with one member of Chien. Due to §34-208 of Connecticut General Statutes:

> "Sec. 34-208. Winding up.
> ..............
> (b) The persons winding up the business and affairs of the limited liability company may, in the name of, and for and on behalf of, the limited liability company: *(1) Prosecute and defend suits;* (2) settle and close the business of the limited liability company; (3) dispose of and transfer the property of the limited liability company; (4) discharge the liabilities of the limited liability company; and (5) distribute to the members any remaining assets of the limited liability company" (emphases added).

Therefore, Chien not only has the obligation to suffer various liabilities which USChina left, but also has the authority to pursue what USChina deserved compensation damage from third parties. In previous cases of this Court, this Court denied Chien to represent USChina, which is total different from this case that Chien represents himself to inherit the remaining both benefits and liability of USChina after the dissolvement.

33

This is civil right of Chien for equal protection of the law,
"42USC §1981 & §1983", by same qualification in suffering
liability and enjoying benefits from lawsuits.

(b) The extortion and retaliation of defendants at Chinese
court, really exposed the bad faith, dishonest, deceiving and
for unjust enrichment of Defendants, when they signed and
executed the Contract with Chien in 2006 and 2007. Since the
judgment debt is forever effective, therefore, the Contract
became a fraud tool in vex and depress Chien forever. Chien has
the right to claim the contract fraud now due to Connecticut
General Statutes

"§52-595 – Fraudulent concealment of cause of action
If any person, liable to an action by another, fraudulently conceals from
him the existence of the cause of such action, such cause of action shall be
deemed to accrue against such person so liable therefor at the time when the
person entitled to sue thereon first discovers its existence."

51. In the contract, there was a term, mentioned the China
forum selection. But that is "Ouster Doctrine", which means
contracting parties could not preventing a court from taking
jurisdiction of a case through contracting agreement.

The rationale of "Ouster Doctrine" was "that a court's
jurisdiction was established by law, and thus could not be
altered by a private agreement. An often-cited example of the
ouster doctrine comes from the Supreme Court's opinion in
Insurance Co. v. Morse, 87 U.S. 445(1874):

34

"Every citizen is entitled to resort to all the courts of the country, and to
invoke the protection which all the laws or all these courts may afford him.
A man may not barter away his...freedom, or his substantial rights...[and]
agreements in advance to oust the courts of the jurisdiction conferred by law
and illegal and void". 87 U.S. 445(1874).

In our case, Plaintiff Chien and Defendant Skypeople are
USA citizens. Although defendant Mr. Xue isn't a US citizen, but
he controlled the operation of Skypeople, a US Citizen. The
lawsuit is to allege the tort happened in both USA and China,
against Chien, a US citizen. To enforce Chinese law and China
forum in this lawsuit became asking Chinese court to deal with
tort in USA territory, which is unlawful attempts to
contractually oust USA courts of its jurisdiction in its
territory. This is unconstitutional, harm to USA Sovereignty.

52. The forum selection clauses in the contract should not be
enforced, and the order of 6/19/13, under Case No. 1:12-CV-
02324(LAK) by US District Court, Southern District Of New York
didn't apply here due to following reasons:

(a) This case based on events happened after the contract
signed. All defendants are third-parties, not parties of the
Contract.

(b) The State-law of CT didn't recognize foreign countries'
law and forum selection, as in Connecticut General Statutes
"§52-604. Definition of foreign judgment".

(c) When US District Court, Southern District Of New York
issued order on 6/19/13, the major events of Chinese court's

order dated 3/23/15, didn't exist. Mr. Xue wasn't a party in

that case.

(d) RICO claims are based on US law, and first time raised.

(e) The claim of "28USC §1350 - Alien's action for tort" is

relative to China's weak judicial system, and poor records of

human right. The famous case of applying "28USC §1350" in USA,

is "Wang Xiaoning v. Yahoo" (see: Wikipedia: Alien Tort Statute)

"In 2007, the World Organization for Human Rights USA filed a lawsuit against
Yahoo! on behalf of Chinese dissidents Wang Xiaoning and Shi Tao (Guao
Quingsheng), claiming jurisdiction under the ATS. According to the complaint,
Wang and Shi Tao used Yahoo! accounts to share pro-democracy material, and a
Chinese subsidiary of Yahoo! gave the Chinese government identifying
information that allowed authorities to identify and arrest them. The
Complaint alleges that the plaintiffs were subjected to 'torture, cruel,
inhuman, or other degrading treatment or punishment, arbitrary arrest and
prolonged detention, and forced labor.'

Yahoo! settled the case in November 2007 for an undisclosed amount of money,
and it agreed to cover the plaintiff's legal costs as a part of the
settlement. In a statement released after the settlement was made public,
Yahoo! said that it would "provide 'financial, humanitarian and legal support
to these families' and create a separate 'humanitarian relief fund' for other
dissidents and their families."

## VI. Causes of Action

53. In following Counts against every defendant, the

contents of all paragraphs in above or below are combined.

### Count 1.  Extortion Against both Defendants

54. Defendants Skypeople and Mr. Xue secretly created in

Shaanxi Supreme People Court, a judgment debt of 253,400

Chinese yuan ($37,315), with penalty of double interests.

Currently, Chien is default at payment. Due to Chinese law,

defendants can any time take coerce action at the Chinese

judicial system in China against Chien, and Chien's business. Chien will be subjected to torture, cruel, inhuman, or other degrading treatment or punishment, arbitrary arrest and prolonged detention, and forced labor, and beatings, which caused Chien losing the freedom to travel to China, and losing his business, damaged reputation, and losing physical visit or reunion with his Chinese relatives, friends, social contacts, and others. USChina was dissolved. To sue USChina in China was conspiracy, fraud, and for unjust enrichment and retaliation. Defendants engaged tort in China, and offended extortion, including C.G.S "§53a-119(5)", and "18USC §875(b)", to damage Chien's foreign business.

**Count 2. Falsified Statements and Concealed Material Information**

55. In manipulation of Defendant Mr. Xue, Defendant Skypeople committed tort of two counts of offense of "18USC §1623" in China Court and this court in Case 3:08-CV-1154, by making false or concealed following material information:

(a) Hiding communication among Chien, Mr. Xue and Alliance regarding the unwillingness of making private investing by Alliance, reverse merger with RAZOR without audited financial statements of Skypeople before 9/8/2006 (see above ¶20).

(b) Hiding communication among Chien, Mr. Xue and Alliance regarding Mr. Xue personal approved the LOI with Alliance and

the News Releases (see above ¶39).

(c) Hiding activities of Chien arranging auditing firm, and Chien's personal visit to Skypeople in November of 2006, and Skypeople actively engaged China private financing by the story of going US Public Listing (see above ¶16&26).

(d) False statement of USChina at Chien failed to perform the contract.

(f) In China Court alone, having concealed that USChina already dissolved in 2013, no longer qualified as a defendant.

**Count 3. Conspiracy Against both Defendants**

56. Defendants made following conspiracy:

(a) In manipulation of Defendant Mr. Xue, Defendant Skypeople conspired with Shaanxi Supreme People Court to arrange trial without notice to Chien, and without notice to Chien of the judgment debt after to issue the order on 3/29/2015; and made a judgment against non-existing entity of USChina.

(b) Defendants Skypeople and Mr. Xue, conspired with his brother Yongke Xue to change the corporation structure of Skypeople (or Tianren) from Chinese domestic to a subsidiary of Pacific Industry Holding Group Co., Ltd., a foreign corporation of Republic of Vanuatu, on November 30, 2006, for purpose of US Public listing without notice to Chien (see above ¶20&30(a)).

(c) Defendants Skypeople and Mr. Xue conspired with his

38

brother Yongke Xue to hire auditing firm Child, Van Wagoner &
Bradshaw without notice to Chien, and broke the second stage
execution of the Contract for Skypeople (see above ¶30(c)).

(d) Defendants Skypeople and Mr. Xue conspired with Barron
to engage reverse merger with Entech in February of 2008.

**Count 4. Racketeering Acts Against both Defendants**

57. Defendants Skypeople and Mr. Xue engaged one count of
extortion, offenses of "18USC 1961(1)(A)", and one count of
retaliation of offense of "18USC §1513(e)"(see above ¶47).

58. Defendants Skypeople and Mr. Xue engaged three counts of
Offenses of "18USC §1341 & §1343 mail fraud and wire fraud",
when they (a) didn't follow pay schedule in Contract but still
used the widely media coverage, made by Chien's performance;
plus Chien's visit to Skypeople as important private financing
in China in 2006; (b)engaged auditing firm Child, Van Wagoner &
Bradshaw without notice to Chien;(c)conspired with Barron to
engage reverse merger with Entech in February of 2008 at the
offices of Guzov Ofsink, LLC, 600 Madison Avenue, 14th Floor,
New York, New York 10022, but without notice to Chien above
¶30).

59. Defendants Skypeople and Mr. Xue engaged one count of
Offense of "18USC §1951" by threat from enforcing judgment-debt
in China, greatly interrupted Chien's interstate business in

China, and became a big barrier for Chien's travel to China
(see above ¶54).

### Count 5. Due Process Violation Against both Defendants

60. There was no notice for both trial and judgment for
Chien. USChina was dissolved, not qualified for defendant. There
was significant violation of due process of Amend XIV in China's
case.

### Count 6. Unjust Enrichments Against both Defendants

61. Skypeople under manipulation of Mr. Xue, conspired to
interrupt the Contract, and escaped reasonable payment. In 2015,
Skypeople under manipulation of Mr. Xue, created the illegal
judgment debt against Chien, then transferred the benefits to
Mr. Xue.

### Count 7. Tort in Securities Law Violation

62. In 10-K of Skypeople filed and signed by Mr. Xue, there
was no disclosure that Skypeople as a middleman, received
240,000 Chinese yuan for officer HongKe Xue. The legal costs
paid by Skypeople, but the benefits were for the major officer
of Mr. Xue. Attached to 10-K of year 2015, Mr. Xue signed two
certificates to certify that there was "no untrue statement" or
"omit of a material fact"; another listed as EXH.32.1 to certify
that:

"pursuant to 18USC §1350, as adopted pursuant to ss.906 of the Sarbanes-
Oxley Act of 2002, that:

'1. The Report **fully complies** with the requirements of Section 13(a) or 15(d) of the Exchange Act of 1934; and
    2. The information contained in the Report **fairly presents**, in all material respects, the financial condition and results of operations of the Company"" (emphasis added).

"18USC §1350" specified the significant felony punishment for officers, who knowing false certify, or willfully certify, on forms of 10-K as what Mr. Xue did now. Mr. Xue offended "18USC §1350". Also, defendants violated "18USC §1001" of making false statement to government organization of SEC.

## VII. Relief

63. The unjust enrichments of Defendants included escaped payment of (a) $220,000 cash as scheduled in the Contract; (b) 2% of Skypeople outstanding shares of all kinds of stock and warrants; plus, about $ 37,315 judgment debt plus interests. All the added up caused Chien's compensation damage.

64. Chien applies here "18USC §1964(c)" to seek triple remedy of the Racketeering damage.

65. A jury-trial is demand.

Respectively submitted

                          Pro Se: *α Chien*
                                  Andrew Chien
                                  665 Ellsworth Avenue
                                  New Haven, CT 06511
                                  Tel:203-5628899


Attached: Order of 3/29/2015 of Shaanxi Supreme People Court, China: English translation and original copy in Chinese

41

Affidavit

To whom it may concern:

 I, Andrew Chien, am over 18 years old, and live at 665 Ellsworth Avenue, New Haven, CT 06511.

I have high level education in both China and USA, and understood both Chinese and English well.

Attached, I translate the Civil Judgment of Shaanxi Province Supreme People's Court, China, dated March 23, 2015, from Chinese into English.

Under oath of perjury penalty, I swore that the translation is accurate at my best knowledge.

Signature: _Andrew Chien_

Print Name: Andrew Chien

Attached.

Public Notary

*Mark of
SS NewHaven
July 10, 2017*

*My Commission Expires
November 30, 2019*

# The People's Republic of China

## Shaanxi Province Supreme People's Court

## Civil Judgment

**(2013) Shaan M sha chu zi No.00084**

Appellant (original plaintiff): SkyPeople Fruit Juice Inc., located at Shaanxi Xi'an Yanta District High-tech District High-tech Road on the 6th high-tech Silver Building Room 20607.

Legal representative: Hongke Xue, Chairman of the Company.

Entrusted Agents: Jingke Bai, and Xuan Zhou, Attorneys of Shaanxi JinYuan Law Firm.

Appellees (original defendant): USChina Channel LLC, 665 Ellsworth Avenue, New haven, CT 06511

Legal representative: Andrew Chien, Chairman of the Company.

Appellees (original defendant): Anding Qian, male, Han ethnic group, born on February 3, 1950, retired employee of Jiangsu Wuxi Chanxiang Fashion Co., Ltd., residing at Room 202, No.16 Tongyangxincun, Nanchan District, Wuxi, Jiangsu Province.

Entrusted agents: Guoping Zhu, and Yanjing Zhu, Attorneys of Jiangsu Maoye Law Firm.

Appellant Skypeople Fruit Juice Inc (hereinafter referred to as "Skypeople"), in the case of disputing with USChina Channel LLC Inc (hereinafter referred to as "USChina Inc"), and Anding Qian, disagreed with the judgment of Xi'an Intermediate Court

1

(2011) Xi Min Si Chu Zi No.00025, and appealed in this Court.
This Court, following the law, set up a collegial bench and held
a public hearing for this case in the presence of Jingke Bai,
counsel for Skypeople, Guoping Zhu, Yanjing Zhu, counsels for
Anding Qian, and absent of USChina Inc which was served with
Summons. The court proceedings of this case have been completed.

After the proceeding, the trial court found that on August
28, 2006, Skypeople with USChina signed the "Service Contract
for Public Listing", with term that USChina, before September 8,
2009, shall select an appropriate shell company for signing
reverse merger agreement with Skypeople, and submit the
agreement to US Securities Exchange Commission ("SEC") for
filing; and Skypeople would pay service fee for 240,000 Chinese
yuan ("yuan"). The contractual dispute will subject to the laws
of China in the local court governing Skypeople. On August 28,
2006, both parties signed "Supplementary Agreement", with term
that Anding Qian, trusted by USChina, would receive the 240,000
Yuan. If USChina fails to select the shell company for
Skypeople, then USChina would stop performance of the contract
upon agreement of Skypeople, and let Anding Qian being
responsible to refund the fee of 240,000 yuan. After the signing
of the contract, on September 1, 2009, Skypeople legal
representative Hongke Xue paid 240,000 yuan to the account of
Anding Qian. On the same day, USChina issued a receipt to

Skypeople. Skypeople, by submitting two e-mails: one from USChina Andrew Chien to President of US Alliance Company, and another from President of US Alliance Company to Skypeople, substantiated that USChina could not find the appropriate shell company for Skypeople within the specified period. Additionally, Skypeople on August 28, 2008, sued USChina in the trial court. On December 9, 2008, the trial court, dismissed the complaint of Skypeople due to the reason that Skypeople could not supply the certified document to substantiate the legitimate corporation status of USChina. On December 7, 2010, Skypeople filed this case in the trial court again. Further investigation shows, on January 11, 2009, upon approval by the Industry and Commerce Administration, Shaanxi Tianren Organic Food Co. Ltd., was renamed as Skypeople Fruit Juice Inc. The above facts were supported by "Service Contract for Public Listing", "Supplementary Agreement", Receipt of the payment, and the transcript of the trial court.

Combined all of complaint of Skypeople, responses of both USChina and Anding Qian, the major disputes of this case are: 1. Jurisdiction of this case; 2. Skypeople's qualification as major beneficiary of this case; 3. Skypeople's Claim of 240,000 yuan with accrued interests of 240,000 yuan; 4.the virtue of the applicable statute of limitations; 5. The issue of Anding Qian having joint and several liabilities.

3

The trial court was of the opinion that this case is a case involving the United States. Both parties agreed that the court where SkyPeople was located, governed the contract, subject to laws of China. It is proper for the Intermediate People's Court undertook this case, because she is in the area where Skypeople locates, and has jurisdiction over cases involving foreign matters. Based on the rights of voluntarily selecting law by the parties, and both parties agreed to apply laws of China, therefore, this case should apply laws of China. The "Service Contract for Public Listing", and "Supplementary Agreement", made on August 28, and August 29, 2006 respectively, were signed under genuine interests of both parties, and deemed valid because the contents didn't violate any of mandatory provision of laws, or the administrative regulations.

1. Jurisdiction of this issue:

Both Skypeople and USChina agreed that any dispute of this contract was governed by the court where Skypeople located. The trail court, as the intermediate people's court governing where Skypeople locates, and having jurisdiction over foreign affairs, has jurisdiction over this issue. Further, USChina didn't raise the issue of invalid of the jurisdiction with applicable statute of limitation during the period of the effective of the contract. Therefore, the trial Court didn't support the argument of USChina that the trial court didn't have jurisdiction over

4

this case. 2. Whether Skypeople is major qualified plaintiff of
this case. Two parties: Skypeople and USChina, had signed
contractors. Hongke Xue is the legal representative of
Skypeople, and paid 240,000 yuan for service fee to USChina from
his personal account. USChina also issued receipt to Skypeople.
Therefore, Skypeople acted as the major plaintiff was qualified.
3. Is that Skypeople suitable to claim from USChina the amount
of refund 240,000 yuan plus 240,000 interests? The condition for
refund by USChina is that she had fraud in execution of the
contract. From the term of the contract, USChina should find the
public listed shell company for Skypeople before September 8,
2006. Otherwise, USChina will suspend the contract under the
approval of Skypeople. From "Article 64, claimant has duty to
submit evidence" of "Civil Procedure of People's Republic of
China", Skypeople submitted two-emails of USChina Andrew Chien
and CEO of US Alliance as evidence that USChina couldn't find
the appropriate shell company for Skypeople, but the two emails
didn't have enough evidence to verify USChina could not find the
shell company, also Skypeople didn't submit any evidence that
USChina under approval of Skypeople, wanted to suspend the
contract. Therefore, the trial court didn't support that
Skypeople wanted USChina making refund of 240,000 yuan, plus
additional interests of 240,000 yuan. 4. Is this case past the
applicable statute of limitation? This case specified that

5

USChina before September 8, 2006, selected an appropriate public listed shell company for Skypeople, otherwise it would refund within three business days, which caused the effective sue day was September 12, 2006. Skypeople on August 28, 2008, sued USChina in the trial Court. On December 9, 2008, the trial Court dismissed the complaint on the reason that Skypeople could not supply the certified document that USChina was a legitimate company, which suspended the statute of limitation. On December 7, 2010, Skypeople raised this case again in the trial court, and claimed that this lawsuit was within the time limitation of two years, which didn't violate the virtue of the applicable statute of limitations. USChina and Anding Qian disputed the case was raised beyond the applicable statute of limitations. The trial court didn't support it by the law. 5. Whether did Anding Qian bear joint and several liabilities? Based on the fact that trial court didn't support Skypeople having substantiated the evidence to claim USChina to refund the service fee plus accruable interests, then there was no law to ask Anding Qian to bear joint and several liabilities. The claim can't stand. The Court didn't support it by the law.

From the summary of above, Skypeople's claim can't stand by law. Pursuant to Article 2 of "Provisions of the Supreme People's Court on Evidence in Civil Procedure": "a party concerned is responsible for providing evidence in support of

the fact on which the said party relies to assert a legal claim or rebut the claim of opposite party. In the event that there is no evidence or the evidence cannot sufficiently support allegations of a party concerned, the party having the burden of proof shall bear the ensuing adverse consequences", the trial court rules as follows: The claim of Skepeople Fruit Juice Inc., is turned down. The case filing fee of 8,500 yuan shall be borne by plaintiff Skypeople Fruit Juice Inc.

After the judgment of the trial court, Skypeople made appeal with claims: 1. The trial court errored in fact finding  that from two e-mails submitted by Skypeople: one from USChina Andrew Chien to President of US Alliance Company, and another from President of US Alliance Company to Skypeople, it could not substantiate that USChina could not find the appropriate shell company for Skypeople within the specified period, then to deny the claims of Skypeople. 2. The trial court applied wrong law by citing Article 2 of Provisions of the Supreme People's Court on Evidence in Civil Procedure. 3. The trial court errored in finding fact of denial of the joint and several liabilities of Anding Qian. Skypeople requested to rebuke the judgment of (2011) Xi Min Si Chu Zi No.00025, and claimed that USChina refund of 240,000 yuan with accrued interests of 240,000 yuan, and Anding Qian having joined and several liabilities; and defendants compensating plaintiff all expenses for filing of the

cases in both primary and appeal.

Defendant Anding Qian replied that, the judgment of the trial court is with clear facts, and correct of the applied law. The defendant had neither any contract, nor written consent with Plaintiff. There is no fact and law to consider that Anding Qian has joint and several liabilities. The appeal would be denied by affirming the original judgment.

This court, after proceeding, fount that the fact verified by the trial court, was true, and affirmed here. In the appeal process, the representative of Skypeople announced that Skypeople already became publicly listed in USA.

This court considered that the trial court was correct on the decision of the jurisdiction of this case, because Article 11 of the contract, signed on August 28, 2006, by Skypeople and USChina, specified that "[t]his Contract shall be governed by the relative laws of the People's Republic of China. The formation of the Contract, its interpretation, application and all disputes arising therefrom apply to the related laws of the People's Republic of China". The above term, no violation of regulations, will be valid.  Therefore, this case will apply relative laws of China.

Whether there is enough reason that Skypeople would get refund of 240,000 and accrued interests of 240,000 from USChina. In the "Service Contract for Public Listing" signed by Skypeople

8

and USChina, there was term that USChina will select an
appropriate shell company for Skypeople before September 8,
2006. In this case, USChina did not have the performance before
the deadline specified by the contract. Till the time when this
case was initiated, USChina still can't select an appropriate
shell company for Skypeople. Now, the plaintiff's complaint is
the issue that plaintiff unilaterally cancelled the contract.
The contract has term that "USChina will, before September 8,
2006, select an appropriate shell company for Skypeople going
public listing in USA, otherwise USChina, under approval of the
Skypeople, will suspend the contract, and refund the 240,000
from the account of Anding Qian." Now, USChina can't select the
appropriate shell company. Follow the term, USChina should
refund the 240,000 to Skypeople. It will not support to pay the
interests, because there is no term of paying the interests.
Therefore, Skypeople asked to refund 240,000 will be supported.

Regarding the issue of whether Anding Qian should have joint
and several liabilities.  Because Anding Qian is not a party of
the contract, only in the Supplementary Agreement, it had the
term that Skypeople made the payment to the individual account
of Anding Qian. Anding Qian didn't have the specified power and
obligation. Therefore, there is no error of the issue of the
trial court.

In Summary of above, the judgment of the trial court,

9

having clear facts, but errored in applied laws, should be adjusted. Following item 1, Code 2 of Article 170 of the Civil Procedure of the People's Republic of China, order the following:

1. Rebuke the civil order of the Intermediate People Court (2011) Xi Min Si Chu Zi No.00025.

2. After ten days of the effective of this order, Appellee USChina should refund 240,000 yuan to Skypeople.

3. Dismiss other claims of Skepeople.

If there is no payment within the specified time, USChina should pay in double interests of the debt, due to Article 253 of the Civil Procedure of the People's Republic of China.

The case application fees of 8,500 yuan for the trial court, and 4,900 yuan for this court, should be compensated by USChina.

This is the final judgment.

Presiding Judge: Hui Hui Tong

Judge: Xiaomin Song

Judge: Baotang Chang

March 23, 2015

SEAL: Shaanxi Supreme People's Court

Clerk: Zhiyong, Tang

(Note: Translated by Andrew Chien on 7/10/2017. *A Chien*)

10

# 中 华 人 民 共 和 国

## 陕 西 省 高 级 人 民 法 院

# 民 事 判 决 书

（2013）陕民三终字第 00084 号

上诉人（原审原告）天人果汁集团股份有限公司，住所地陕西省西安市雁塔区高新区高新路 6 号高新银座 20607 室。

法定代表人薛红科，该公司董事长。

委托代理人白景科、周煊，陕西锦园律师事务所律师。

被上诉人（原审被告）美中通道有限责任公司，住所地美国康涅狄格州纽黑文市 Ellsworth 大街 665 号。

法定代表人 Andrew chien，该公司董事长。

被上诉人（原审被告）钱安定，男，汉族， 1950.年 2 月 3 日出生，江苏省无锡蚕乡时装有限公司退休职工，住江苏省无锡市南长区通扬新村 16 号 202 室。

委托代理人朱国平、朱彦菁，江苏茂业律师事务所律师。

上诉人天人果汁集团股份有限公司（以下简称天人公司）因与美中通道有限责任公司（以下简称美中公司）、钱安定委托合同纠纷一案，不服西安市中级人民法院（2011）

1

西民四初字第00025号民事判决，向本院提出上诉。本院依法组成合议庭公开开庭审理了本案，天人公司委托代理人白景科、钱安定委托代理人朱国平、朱彦菁到庭参加诉讼，美中公司经依法传唤未到庭参加诉讼。本案现已审理终结。

原审经审理查明，2006年8月28日，天人公司与美中公司签订《上市服务合同》约定:美中公司于2006年9月8日前在美国挑选出适合天人公司合并的壳公司，天人公司与壳公司签订合并协议，并报美国SEC备案;天人公司向美中公司支付服务费24万元;合同争议适用中国法律并由天人公司住所地法院管辖。2006年8月29日，双方又签订《补充协议》约定:美中公司委托钱安定接收天人公司支付的上述24万元;若美中公司未依约挑选出适合天人公司合并的壳公司，美中公司在天人公司同意下中止合同执行，由钱安定帐户退返天人公司已支付的24万元。合同签订后，2006年9月1日，天人公司法定代表人薛红科向钱安定帐户付款24万元，同日，美中公司向天人公司出具了收款收据。天人公司提供美中公司钱安德鲁发给美国Alliance公司总裁的电子邮件及美国Alliance公司总裁向天人公司发送的电子邮件内容用以证明美中公司未在约定时间内给其找到合适上市的壳公司。另查，天人公司于2008年8月28日将美中公司诉至原审法院，2008年12月9日原审法院以天人公司未能提供美中公司系合法企业的公证认证手续为由驳回天人公司

的起诉，2010 年 12 月 7 日，天人公司向原审法院提起本案诉讼。又查，2009 年 1 月 11 日，经工商机关核准，陕西天人有机食品股份有限公司名称变更为天人果汁集团股份有限公司。以上事实，有上市服务合同、补充协议、收款收据、庭审笔录等在卷佐证。

结合原告天人公司的诉请及被告美中公司、钱安定的答辩，本案的主要争议焦点为：1、关于本案的管辖权问题；2、天人公司作为本案原告的主体资格问题；3、天人公司主张美中公司退返 24 万元并承担利息 24 万元的依据是否充分；4、本案是否超过诉讼时效；5、钱安定应否承担连带责任问题。

原审法院认为，本案属涉美案件，双方当事人约定由天人公司所在地人民法院管辖，并适用中国法律，原审法院作为天人公司所在地的中级人民法院有权受理涉外案件。基于当事人有选择法律适用的权利，因双方约定适用中国法律，故本案应适用中国法律。天人公司与美中公司于 2006 年 8 月 28 日、8 月 29 日签订的《上市服务合同》、《补充协议》，系当事人真实意思表示，内容不违反法律及行政法规的强制性规定，应属有效合同。

一、关于本案的管辖权问题。天人公司与美中公司约定本案合同纠纷由天人公司所在地法院管辖，原审法院作为天人公司所在地有涉外案件管辖权的中级人民法院，对本案享有管辖权。且美中公司并未在法律规定的时效期间内对管辖

3

权提出异议，故美中公司辩称原审法院对本案无管辖权，于法无据，原审法院依法不予支持。二、天人公司主体资格是否适格。本案合同签订的双方当事人为天人公司及美中公司，薛红科系天人公司法定代表人，其以个人名义代表天人公司向美中公司支付了 24 万元服务费，美中公司亦向天人公司出具了收款发票，因此，天人公司作为本案原告主体资格适格。三、天人公司主张美中公司退款 24 万元并承担利息 24 万元依据是否充分。美中公司退还服务费的前提是其在履行合同中存在违约行为。按照合同约定，美中公司应在 2006 年 9 月 8 日前为天人公司挑选出适合天人公司在美国上市的壳公司，否则，美中公司在天人公司同意下中止合同执行，根据《中华人民共和国民事诉讼法》第六十四条"当事人对自己提出的主张，有责任提供证据"的规定，本案中，天人公司提供美中公司钱安德鲁及美国 Alliance 公司负责人的电子邮件佐证美中公司未依约为其挑选合适上市的壳公司，而该两份邮件内容并不足以证明美中公司未向天人公司挑选到合适上市的壳公司，且天人公司亦未提交佐证美中公司要求中止合同履行并经天人公司同意的相关证据，因此，天人公司以美中公司违约，要求其退还服务费 24 万元并承担 24 万元利息损失的诉讼请求无事实及法律依据，原审法院依法不予支持。四、本案是否超过诉讼时效。本案合同约定美中公司于 2006 年 9 月 8 日前为天人公司挑选合适的壳公司，

4

否则应在三个工作日内返还服务费，则本案诉讼时效的起算时间为 2006 年 9 月 12 日，天人公司于 2008 年 8 月 28 日将美中公司诉至原审法院，2008 年 12 月 9 日原审法院以天人公司未能提供美中公司系合法企业的公证认证手续为由驳回天人公司的起诉，依法引起诉讼时效中断，至 2010 年 12 月 7 日天人公司向原审法院提起本案诉讼，其提起本案诉讼符合两年诉讼时效的法律规定，并未超过诉讼时效，美中公司及钱安定辩称已超过诉讼时效无事实依据，原审法院依法不予采纳。五、钱安定应否承担连带责任。基于天人公司主张美中公司退还服务费并承担利息因证据不足原审法院未予支持，故天人公司主张钱安定承担连带责任于法无据，该请求不能成立，依法不予支持。

综上，天人公司的诉讼请求依法不能成立。依照《最高人民法院〈关于民事诉讼证据的若干规定〉》第二条"当事人对自己提出的诉讼请求所依据的事实或反驳对方诉讼请求所依据的事实有责任提供证据加以证明。没有证据或证据不足以证明当事人民事主张的，由负有举证责任的当事人承担不利后果"的规定，判决如下：驳回原告天人果汁集团股份有限公司的诉讼请求。案件受理费 8500 元，由原告天人果汁集团股份有限公司负担。

宣判后，天人公司不服，提起上诉称：1、原审法院认为天人公司提供美中公司钱安德鲁及美国 Alliance 公司负责

人的电子邮件佐证美中公司未依约为其挑选合适上市的壳公司，而该两份邮件内容不足以证明美中公司未向天人公司挑选到合适上市的壳公司，因而不支持天人公司的诉讼请求。属于对事实的认定错误。2、原审法院依照《最高人民法院〈关于民事诉讼证据的若干规定〉》第二条的规定，判决驳回天人公司的诉讼请求，属于适用法律错误。3、原审判决对天人公司主张钱安定承担连带责任不予支持，属认定事实错误。请求撤销（2011）西民四初字第00025号民事判决；被上诉人美中公司返还上诉人24万元及利息24万元；被上诉人钱安定对上述债务承担连带清偿责任；被上诉人承担一、二审诉讼费用。

被上诉人钱安定答辩称：原审判决事实清楚，适用法律正确。本人与上诉人之间并无合同关系，也无书面之间的约定。上诉人请求钱安定承担责任无事实及法律依据，请求驳回上诉，维持原判。

本院经审理查明，原审查明的事实属实。应予确认。二审另查明，天人公司代理人称，天人公司已在美国上市。

本院认为，关于本案管辖权问题，原审法院处理正确。关于本案法律适用问题。本案天人公司与美中公司2006年8月28日签订的协议中第十一条约定"本合同由中华人民共和国法院管辖，本合同的订立、解释、适用以及因此发生的一切争议适用中华人民共和国法律"。以上约定未违反法律

规定，应为有效。故本案应适用中华人民共和国法律。

　　天人公司主张美中公司退款 24 万元并承担利息 24 万元依据是否充分。天人公司与美中公司签订《上市服务合同》约定：美中公司于 2006 年 9 月 8 日前在美国挑选出适合天人公司合并的壳公司。本案中，美中公司未能在合同约定的期限内完成该义务。截止起诉前，美中公司仍然未找到合适的壳公司，现原告起诉是行使单方解除权的问题。双方协议还约定："美中公司应在 2006 年 9 月 8 日前为天人公司挑选出适合天人公司在美国上市的壳公司，否则，美中公司在天人公司同意下中止合同执行，由钱安定帐户退返天人公司已支付的 24 万元。"现美中公司仍未找到合适的壳公司，按照约定，美中公司应退还天人公司 24 万元。关于利息，因双方未约定，应不予支持。因此，天人公司要求返还 24 万元的诉讼请求应予支持。

　　关于钱安定是否承担责任的问题。因钱安定不是本案当事人，只在补充协议中约定，天人公司将款项打到美中公司委托的钱安定个人账户里，钱安定没有约定的权利及义务，故原审判决对此处理并无不当。

　　综上，原审判决事实清楚，但适用法律有误，应予改判。依据《中华人民共和国民事诉讼法》第一百七十条第一款（二）项之规定，判决如下：

　　一、撤销西安市中级人民法院（2011）西民四初字第

7

00025 号民事判决;

　　二、本判决生效后 10 日内被上诉人美中通道有限责任公司返还上诉人天人果汁集团股份有限公司 24 万元。

　　三、驳回上诉人天人果汁集团股份有限公司其余诉讼请求。

　　如果未按本判决指定的期间履行给付金钱义务，应当依照《中华人民共和国民事诉讼法》第二百五十三条之规定，加倍支付迟延履行期间的债务利息。

　　一审案件受理费 8500 元、二审案件受理费 4900 元由被上诉人美中通道有限责任公司承担。

　　本判决为终审判决。

审　判　长　　同惠会

代理审判员　　宋小敏

代理审判员　　常宝堂

二〇一五年三月二十三日

本件与原本核对无异

书　记　员　　唐智勇
