UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW CHIEN, | |
| Plaintiff, | 3:17-CV-01654 (CSH) |
| v. | |
| FUTURE FINTECH GROUP INC., HONGKE XUE, and BARRON CAPITAL ADVISORS, LLC, | AUGUST 31, 2018 |
| Defendants. | |

**RULING ON DEFENDANTS' MOTIONS TO DISMISS**

**HAIGHT, Senior District Judge:**

Plaintiff Andrew Chien ("Plaintiff"), proceeding *pro se*, brings this diversity action against Defendants Future Fintech Group Inc., Hongke Xue, and Barron Capital Advisors, LLC (collectively, "Defendants"). *See* Doc. 20 ("Am. Compl."). The Defendants Future Fintech Group Inc. and Hongke Xue (collectively, the "Fintech Defendants") move to dismiss the Amended Complaint pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 52. Defendant Barron Capital Advisors, LLC ("Barron") also moves to dismiss pursuant to the same Rules and the applicable statute of limitations. Doc. 34. Plaintiff filed objections to both motions, [Docs. 47, 57], and the Fintech Defendants filed a reply, [Doc. 64]. This Ruling resolves Defendants' motions.

**I. BACKGROUND**

The facts herein are taken from Plaintiff's Amended Complaint and accepted as true only for the purposes of this Ruling.

Plaintiff's claims arise from a contract dated August 28, 2006 (the "2006 contract"), between USChina Channel LLC ("USChina") and Shanxi Tianren Organic Food Co., Ltd. ("Tianren"), which was later known as Skypeople Fruit Juice, Inc. ("Skypeople"). Am. Compl. ¶ 12. Tianren hired USChina, Plaintiff's sole proprietorship, to provide guidance to Tianren to become a publicly traded company in the United States. *Id*. Future FinTech Group Inc. is the most recent iteration of Tianren and Skypeople, with Hongke Xue as Future Fintech Group Inc.'s Chairman and CEO, *id.* at ¶ 5, whereas Barron was allegedly hired by Skypeople to consult on a "secret[] . . . reverse merger with Entech," *id.* at ¶ 17. Entech is a Barron-controlled shell company. *Id.* at ¶ 11. This is not the first lawsuit that Plaintiff has pursued in relation to the 2006 contract.[1]

Plaintiff also raises in the instant case new claims in relation to a 2015 judgment against him in the Shaanxi Supreme People's Court in China. *Id.* at ¶¶ 1–3, 54–56, 59–61. The underlying issue in that lawsuit similarly concerns the 2006 contract. *Id.*

Plaintiff asserts several claims against the Fintech Defendants: extortion, falsified statements and concealing material information, conspiracy, racketeering, due process violations, unjust enrichment, and securities law violations. *Id.* at ¶¶ 54–62. Plaintiff separately alleges that Barron engaged in several instances of "[f]raudulent concealment" and conspiracy with the Fintech Defendants. *Id.* at ¶¶ 63–67.

---

[1] Plaintiff has filed *Chien v. Skypeople Fruit Juice Corp.*, No. 08-cv-1154 (CSH), 2009 WL 3260656 (D. Conn. Oct. 9, 2009), *Chien v. Barron Capital Advisors, LLC*, No. 09-cv-1873 (CSH), 2011 WL 3047810 (D. Conn. July 25, 2011), *Chien v. Barron Partners, L.P.*, No. CV11 5033976S, 2012 WL 266342 (Conn. Super. Ct. Jan. 5, 2012), and *USChina Channel LLC v. SkyPeople Fruit Juice, Inc.*, No. 12-cv-02324 (LAK) (S.D.N.Y. June 19, 2012).

## II. STANDARD OF REVIEW

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same); *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (where the plaintiff proceeds *pro se*, a court is "obligated to construe his pleadings liberally" (quoting *McEachin v. McGuiness*, 357 F.3d 197, 200 (2d Cir. 2004))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (in reviewing a *pro se* complaint, the court "must liberally construe [the] pleadings, and must interpret [the] complaint to raise the strongest arguments it suggests"). However, despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"On a motion to dismiss, the issue is 'whether the claimant is entitled to offer evidence to support the claims.'" *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1984)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard creates a "two-pronged approach," *Iqbal*, 556 U.S. at 679, based on "[t]wo working principles." *Id*. at 678.

First, all factual allegations in the complaint must be accepted as true and all reasonable inferences must be drawn in the favor of the non-moving party. *See id.; see also Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591–92 (2d Cir. 2007) (citation omitted). The presumption of truth does not extend, however, to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, "a complaint that states a plausible claim for relief" will survive a motion to dismiss and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (quotation marks omitted). "Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Associated Fin. Corp. v. Kleckner*, 480 F. App'x 89, 90 (2d Cir. 2012) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

## III. DISCUSSION

**A. Standing**

The Court granted Plaintiff's motion for permission to file the instant case on the basis that then-newly adopted Section 34-267a of the Connecticut General Statutes, effective July 1, 2017, created the possibility that Plaintiff could pursue his claims on behalf of USChina. Doc. 4 at 4–5.

Specifically, the Court noted that Section 34-267a was unclear as to "whether Chien possesses statutory entitlement to pursue USChina's claims for breach of the underlying contract," but that Plaintiff was entitled the chance to establish that he is the "proper plaintiff to bring an action . . . to enforce the dissolved USChina's rights under Connecticut law." *Id.*

Article III of the Constitution limits federal courts to deciding only actual cases and controversies. U.S. Const. art. III, § 2. To have Article III standing, a plaintiff must meet three elements: injury-in-fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. Most relevant here is the element of injury-in-fact, which requires the plaintiff be "the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

This Court, in an earlier related case, found that Plaintiff as a *pro se* litigant could not represent USChina under common law. *Chien v. Barron Capital Advisors, LLC*, No. 09-cv-1893 (CSH), 2011 WL 3047810 (D. Conn. July 25, 2011). Generally, "a layperson may not represent a separate legal entity such as a corporation," *Lattanzio v. COMTA,* 481 F.3d 137, 139 (2d Cir. 2007), nor can a corporation assign rights to a *pro se* litigant to circumvent this rule, *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983). However, the Court subsequently recognized that a change in Connecticut statutory law, the aforementioned Section 34-267a, *might* allow the last member of a limited liability company to act as his own legal representative in order to prosecute claims on the company's behalf. Doc. 4 at 3. It appeared possible that such a reading of the statute could allow Plaintiff to bring this suit.

Unfortunately for Plaintiff, he has not established that this is indeed the proper interpretation of Section 34-267a. Plaintiff merely cites to the statute without making any legal arguments to

conclude that he can "act[] as pro se to legally represent himself as the only member of the winding up of USChina." Am. Compl. at ¶ 50. Plaintiff does cite to Wikipedia for the general principle of the right to self-representation, [Doc. 47 at ¶ 2], but he fails to contextualize this right as applied to corporate law.

In light of Plaintiff's *pro se* status, the Court contemplates how Plaintiff would be able to argue the successful application of Section 34-267a to his case. The statute states that, "[i]n winding up its activities and affairs, a limited liability company: . . . (2) may . . . (B) prosecute and defend actions and proceedings." Conn. Gen. Stat. § 34-267a(b)(2)(B). Moreover, "[i]f a dissolved limited liability has no members, the *legal representative* of the last person to have been a member may wind up the activities and affairs of the company." *Id.* § 34-267a(c) (emphasis added). Plaintiff would thus need to show that (1) he was the final member in USChina, and (2) successfully argue that the "legal representative of the last person" can be one and the same as the "last person" under the new Connecticut state statute. Only then would he have standing to bring this action on behalf of the harms alleged against USChina.

Plaintiff seems to be able to show that he was the final member of USChina, but the rules of statutory interpretation do not favor him on the second point. Unless the legislative branch indicates otherwise, "courts must begin their interpretation of statutory language with the general presumption that a statutory term has its common-law meaning." *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 402 (2003). In the Second Circuit, "a sole member of a limited liability company must bear the burdens that accompany the benefits of the corporate form and may appear in federal court only through a licensed attorney." *Lattanzio*, 481 F.3d at 140. "Legal representative" would seem at the least to require a licensed attorney. Moreover, that the Connecticut statute uses the

phrase "legal representative of the last person" instead of the "last person," Conn. Gen. Stat. § 34-267a(c), also disfavors finding standing for the Plaintiff.

Consequently, Plaintiff has not shown that the changes in the Connecticut statutory law defeat the common law presumption against *pro se* litigation on behalf of a corporation, *see Lattanzio*, 481 F.3d at 140, and *Jones*, 722 F.2d at 23. Accordingly, the Court finds that Plaintiff has not met his burden to establish Article III standing and is required to dismiss the instant case on this basis alone.

**B. Statute of Limitations**

Even if Plaintiff had established standing, the applicable statutes of limitations bar Plaintiff from bringing his claims that arise from alleged violations of the 2006 contract.

Plaintiff alleges that the Defendants engaged in conspiracy, racketeering, and fraud. Am. Compl. at ¶¶ 56(b)–(d), 58, 63–67. Plaintiff mainly cites to criminal statutes as evidence of these violations without regard to whether these statutes provide a private right of action,[2] *e.g.*, *id.* at ¶¶ 31–32, but, in light of Plaintiff's *pro se* status, the Court interprets these claims to mean that he is claiming causes of action concerning civil conspiracy, civil Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy, and civil fraud.[3]

Under Connecticut state law, the statute of limitations governing civil conspiracy and fraud

---

[2] "'The question whether Congress . . . intended to create a private right of action [is] definitively answered in the negative' where a 'statute by its terms grants no private rights to any identifiable class.'" *Gonzaga University v. Doe*, 536 U.S. 273, 283–84 (2002) (quoting *Touche Ross & Co. V. Redington*, 442 U.S. 560, 576 (1979)). Generally, criminal statutes cannot be enforced by civil actions. *United States v. Claflin*, 97 U.S. 546 (1878).

[3] Plaintiff also alleges the Fintech Defendants committed a "'[t]ort in [s]ecurities [l]aw [v]iolation." Am. Compl. at ¶ 62. The Court addresses this claim in the next section.

is three years. *Rosenblatt v. Berman*, 119 A.2d 118, 122 (Conn. 1955) (holding that the statute of limitations for a conspiracy to cheat and defraud the plaintiff was three years); *Einbinder & Young, P.C. v. Soiltesting, Inc.*, 418 A.2d 95, 96 (Conn. Sup. Ct.1980) ("In Connecticut, the three year statute of limitations for actions ground in tort is generally applied to actions for fraud and deception."). However, the statute of limitations can be tolled if there was fraudulent concealment: "such cause of action . . . accrue[s] . . . when the person entitled to sue thereon first discovers its existence." Conn. Gen. Stat. Ann. § 52-595. In contrast, RICO civil claims are governed by a four-year statute of limitations period. *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). This period can similarly be tolled as it begins when a plaintiff discovers his injury, not when he discovers the cause of his injury. *Rotella v. Wood*, 528 U.S. 549, 554 (2000).

Plaintiff admits that he "initiated several lawsuits against Skypeople etc." after he became "aware that Skypeople and Mr. Xue cheated him," beginning in August 8, 2008, in *Chien v. Skypeople Fruit Juice Corp.*, No. 08-cv-1154 (CSH), 2009 WL 3260656 (D. Conn. Oct. 9, 2009). Am. Compl. at ¶¶ 31–32. The absolute latest date upon when Plaintiff can claim he discovered his injuries arising from alleged violations of the 2006 contract is thus August 8, 2008. Plaintiff filed a motion to pursue the instant case on July 10, 2017—more than nine years after his first filing. Thus, the Plaintiff is barred under state law and federal RICO law from bringing his claims in relation to the 2006 contract because it is now far beyond the applicable statutes of limitations.

**C. Securities Law Violation**

Plaintiff also alleges that the Fintech Defendants lied in their 10-K filing in 2015 in violation of 18 U.S.C. §§ 1001 and 1350. Am. Compl. at ¶ 62. Section 1001 criminalizes the making of false statements to the government, 18 U.S.C. § 1001(a), and section 1350 imposes criminal penalties on

anyone who knowingly or willfully falsely certifies a periodic financial report, 18 U.S.C. § 1350(c).

As stated previously, Article III standing requires an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff frames this cause of action as a civil tort, but it is unclear how he has been harmed or injured even if the Fintech Defendants had made false statements in their 10-K filing. The Court imagines that a shareholder could be injured by such a violation, but Plaintiff has not claimed to be a shareholder in Future Fintech Group Inc. Accordingly, Plaintiff fails to establish standing for an actionable "'[t]ort in [s]ecurities [l]aw [v]iolation." Am. Compl. at ¶ 62.

**D. Foreign Judgment Claims**

Plaintiff's remaining claims, which are only against the Fintech Defendants, arise from a lawsuit in the Shaanxi Supreme People's Court (the "Shaanxi Court") in China. The Shaanxi Court issued a judgment in the amount of 253,400 yuan, or $37,315, against Plaintiff on May 23, 2015. *Id.* at ¶¶ 1–3, 54–56, 59–61. This decision centered on the 2006 contract as well. *Id.* at ¶ 19. Plaintiff alleges that this judgment amounts to extortion, the Fintech Defendants lied or hid information to obtain the result, they committed racketeering by threatening to enforce the Shaanxi Court's decision, they violated his due process rights by not providing notice, and they were unjustly enriched by the decision. *Id.* at ¶¶ 1–3, 54–56, 59–61.

Plaintiff essentially asks the Court to challenge the validity of the Shaanxi Court's decision and of the Chinese legal system as a whole. However, Connecticut law requires deference to foreign judgments in most cases "because of the comity due to the courts and judgments of one nation from another." *Turner v. Frowein*, 752 A.2d 955, 977 (Conn. 2000) (internal quotations omitted).

Plaintiff makes serious human rights allegations that he "will be subjected to torture, cruel, inhuman, or other degrading treatment or punishment" as a result of losing the case in China, Am.

Compl. at § 41, but he offers no support for this extraordinary conclusion aside from a general reference to the tragic Tiananmen Square protests of 1989, [Doc. 47 at ¶ 1]. *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but we are not required to credit conclusory allegations or legal conclusions couched as factual allegations."). To the extent that Plaintiff's human rights violation claim could be substantiated, it does not appear that the Fintech Defendants would be responsible. Plaintiff's clarifies that any potential human rights violations would be due to China's bankruptcy policies regarding debtors, [Doc. 47 at ¶ 1], not due to the Shaanxi Court's decision. However, Plaintiff went bankrupt in China before the Shaanxi Court proceedings even took place. Am. Compl. at ¶ 22.

Plaintiff also accuses the Fintech Defendants of Fourteenth Amendment due process violations. *Id.* at ¶ 60. The parties dispute whether Plaintiff received notice of the Shaanxi Court proceedings, but Fintech Defendants would similarly not be responsible for any alleged due process violations as they are neither a government nor acting as agents of the government by merely using the judicial process.[4] *See Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001) ("[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of

---

[4] This is notwithstanding consideration of whether the United States Constitution even applies to the Chinese government.

Plaintiff also seems to have added an additional cause of action based upon the Alien Tort Claims Act (ATCA) and the Torture Victim Protection Act (TVPA). Doc. 57 at ¶ 19. It is unclear exactly what Plaintiff is alleging is an ATCA or TVPA violation, so the Court will only address Plaintiff's assertion that the Fintech Defendants acted "under color of Chinese law." *Id.* As with the due process claim, merely using the courts does not constitute state action.

the State itself.'" (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974))); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982) ("Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'"); *Ex parte Commonwealth of Virginia*, 100 U.S. 339, 346 (1879) ("The prohibitions of the Fourteenth Amendment are directed to the States.").

As for Plaintiff's other allegations concerning the Shaanxi Court's decision, they either also constitute conclusory allegations or amount to no more than mere complaints of being on the losing side. Obtaining a favorable judicial result and attempting to enforce that result do not equate to "unjust enrichment" or racketeering, respectively. The Court finds no reason to credit Plaintiff's conclusions concerning the Shaanxi Court's decision and consequently declines to attack the validity of a foreign court's adjudicatory result here.

### IV. ALTERNATIVE GROUNDS FOR DISMISSAL

The Defendants raise a number of alternative grounds for dismissal, including lack of personal jurisdiction, improper service, failure to state a claim, and collateral estoppel. Docs. 35 and 53. As the Court has already determined that the Plaintiff's complaint should be dismissed for the aforementioned reasons including standing, the Court finds it unnecessary to make any determinations upon these alternative grounds.

### V. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss [Docs. 34, 52] are GRANTED, Plaintiff's Motions for Leave to File an Amended Complaint [Docs. 60, 62] are DENIED as moot,

and Plaintiff's Motion to Compel Discovery [Doc. 63] is DENIED as moot, and Plaintiff's Amended Complaint [Doc. 20] is DISMISSED with prejudice. As a result, there are no pending claims in this action, and the Clerk is directed to close this case.

It is SO ORDERED.

Dated: New Haven, Connecticut
August 31, 2018

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge